*Northern District*

No. 4725

**ALTON MANOR, INC.**

v.

**WILLIAM F. MEADER**

(December 20, 1954)

*Gadsby, P. J.* This is an action of contract with two counts to recover $900.00 on the first count for breach of a covenant to pay rent as provided in a written lease, plus a reasonable attorney's fee for recovering the said amount as provided in said lease.

The answer consists of a general denial and allegations that the plaintiff agreed to make necessary repairs upon reasonable notice, and for such purposes retained possession and control of the premises, that a flowage of water into the apartment upon rainfalls deprived the defendant of his right to quiet enjoyment, that the plaintiff's action or lack of action in failing to correct the said condition upon notice constituted a constructive eviction and that defendant abandoned the premises within a reasonable time.

*The evidence was as follows*: The plaintiff introduced the lease, and its agent testified that the defendant occupied an apartment in the plaintiff's building at 5 Alton Court in Brookline, Mass., under the terms of the said lease. The agent further testified that he received a letter from the defendant on or about February 28, 1951, which letter was introduced in evidence. Thereafter, on May 1, 1951 the plaintiff discovered the apartment had been vacated and on said May 1 it received the keys thereto in the mail. Copies of letters sent by the plaintiff to the defendant were introduced in evidence which in substance stated that the plaintiff was not accepting a surrender of the apartment and intended to hold the defendant to the terms of the lease. The agent testified that no payments of rent had been made after the payment of the month's rent for March, 1951 referred to in the

defendant's letter; that after the defendant moved out no redecoration of the apartment was done or has been done to date; that the apartment was in good condition and that the defendant's wife had complained about other things in the apartment and in a conversation in December had said the rent was too high, but neither the defendant nor his wife had ever complained to him about the bedroom. On cross-examination the agent stated that four months elapsed before he was able to secure a new tenant.

The defendant's wife then testified that water flowed into the bedroom every time it rained, starting in October of 1950, that it was particularly bad in December, and continued until she and the defendant moved on May 1, 1951; the water came into the room from the ceiling at the wall just inside the door of the bedroom. She testified that when it rained very hard they slept in the living room. She testified that she had a conversation with the plaintiff's agent on December 15, 1950 about the condition and he said he would fix it. On cross-examination the defendant's wife stated that when the rain was heavy the water came down from the ceiling to the floor in a six inch wide streak and the maximum accumulation of water on the floor was a puddle less than one foot in diameter.

A tenant in the building testified that she had seen water coming down the wall as the defendant's wife had described it; that the water rippled on the wall but that she had seen no accumulation of water on the floor.

The defendant testified that the water came in when it rained as his wife had testified and made a puddle on the floor; that it caused the bedroom door to be warped; that there was dampness in the whole apartment for a long time after a rain storm; that the condition started in October, 1950 and continued until he moved; that when it rained very hard they slept in the living room; that the condition was unsightly, that he notified the plaintiff's agent by

telephone sometime in October of 1950 about the condition in the apartment, that he started to look for a place in January or February, 1951 and that he found another apartment in April, 1951.

The plaintiff called a Sanitary Inspector of the Brookline Health Department whose records showed that he inspected the apartment on February 9, 1951 and found water stains on the bedroom wall. He testified the wall was not damp, that he had not been there when it rained and he got up on a stool to examine the stain; that he examined the premises at the request of the defendant.

At the close of the trial and before the final arguments, the plaintiff made the following requests for rulings on which the trial judge ruled as indicated:

"1. The plaintiff was not bound by custom or by a covenant in the lease to make repairs on the premises leased by the defendant. *"Denied. No evidence was introduced as to custom."*

2. A gratuitous promise to make repairs by the plaintiff imposed no legal obligation on the plaintiff to do so. *"Given."*

3. Even if the plaintiff was bound by custom, covenant or contract to repair the premises and by its failure to do so the premises became uninhabitable, or unfit for the purpose for which they were leased, the defendant had no right to quit the premises or to refuse to pay his rent. *"Denied as not applicable to the facts found."*

4. The defendant's covenant to pay rent was not affected by any injury to the premises and is independent of any covenant of the plaintiff to make repairs. *"Given."*

5. An eviction is where the tenant is intentionally deprived of his possession by the landlord. *"Given."*

6. There is no evidence that the plaintiff or its agents acted or failed to act with the intention of depriving the defendant of the enjoyment of the leased premises. *"Denied."*

7. There is no evidence that the plaintiff did anything

of such a grave and permanent character with the intention of depriving the defendant of the enjoyment of the leased premises as to constitute an eviction. *"Denied."*

8. There is no evidence that the plaintiff's failure to make repairs was motivated by an intention to deprive the defendant of the enjoyment of the leased premises. *"Denied."*

9. The burden of proof is on the defendant to prove an eviction. *"Given."*

10. If the Court finds that there was a leak in the roof over the defendant's suite in times of heavy rainfall and that the leak was in a corner of the room but that the leak at no time caused the ceiling or any part thereof to fall and that the defendant continued to use the room as a bedroom and that no appreciable amount of water came into the room as a result of the leak, then the court must find that there was no eviction of the tenant. *"Denied as not applicable to the facts found."*

11. Evidence of an eviction cannot be inferred from a mere failure to repair the premises whether or not there is a covenant to repair. *"Denied."*

12. The breach of covenant to pay rent by the tenant under the lease entitled the landlord to repossess the apartment and sue the tenant for the balance of the annual rent." *"Given."*

The trial justice also allowed the following requests of the defendant:

16. Upon all the evidence the present case, the plaintiff deprived the defendant of the beneficial enjoyment of a part of a leasehold.

19. The landlord owed a duty to his tenant not to expose him to a dangerous condition which reasonable care on his part could have prevented.

The Court (Bert E. Holland, J.) made the following findings and found for the defendant on both counts of the declaration.

"This is an action of contract brought to recover

rent alleged to be due the plaintiff from the defendant under the terms of a written lease.

The lease which was introduced in evidence purported to lease a certain apartment in a building in Brookline for a period of thirty-four (34) months commencing November 1, 1949 and expiring August 31, 1952 at a rental of Thirty-four Hundred Dollars ($3400) payable in monthly instalments of One Hundred Dollars ($100) each.

The defendant's answer was a General Denial and an allegation that there had been a constructive eviction by reason of the plaintiff's breach of implied covenant for quiet enjoyment.

Under date of February 28, 1951 the defendant notified the plaintiff in writing of his intention to vacate the premises in question on May 1, 1951 alleging bad and unhealthy conditions which the plaintiff had failed to correct after having been duly notified. The defendant vacated the premises on May 1, 1951 and I find that monthly rental instalments had been paid in full to that date.

About the middle of December, 1950 there was a leakage of water through the walls of the bedroom and this leakage took place during every storm causing such an accumulation of moisture and dampness as to render the premises unfit for occupancy. This condition was called to the attention of the plaintiff which failed to remedy the same. This condition caused the defendant on many occasions to vacate the bedroom and use the living-room for sleeping purposes. I find these facts to be a substantial interference with the implied covenant for quiet enjoyment of the premises amounting to a constructive eviction.

I find that in consequence of the aforesaid conditions and after proper notice the defendant within a reasonable time vacated the premises and was no longer liable to pay rent for the unexpired term of the lease."

This report contains all the evidence material to the question reported.

The plaintiff claimed to be aggrieved by the trial court's refusal to grant its requests for rulings numbered 1, 3, 6, 7, 8, 10 and 11, and by the allowance of defendant's requests for ruling numbered 16 and 19.

The issue presented for determination is whether or not the trial judge was correct in his denial of the plaintiff's requests numbered 6, 7 and 8 which in effect requested the Court to rule that there was no constructive eviction of the defendant by the plaintiff.

The Court ruled that there was a constructive eviction and granted the defendant's requests numbered 16 and 19 and found for the defendant on both counts of the declaration. At the outset, it may be pointed out that there was no covenant to repair on the part of the landlord. The mere fact that the landlord had the right under the lease to enter the premises to make repairs did not impose a duty on him to do so. *Clifford v. Atlantic Cotten Mills*, 146 Mass. 47. *Boston v. Gray*, 144 Mass. 53.

The case of *Stone v. Sullivan*, 300 Mass. 450 seems in point. As the Court said at page 454, "And there is no other basis in the record for a finding that control was reserved by the lessor. In the absence of express agreement by a lessor to make repairs on leased premises not in his control, a failure to do so does not give the lessee the right to quit or to refuse to pay the rent, even though for lack of repair the leased premises became uninhabitable or unfit for the use for which they were leased. *Kramer v. Cook*, 7 Gray, 550, 553. *Royce v. Guggenheim*, 106 Mass. 201, 202. *Roberts v. Lynn Ice Co.*, 187 Mass. 402. *Ware v. Hobbs*, 222 Mass. 327, 328. Such refusal or neglect to repair, not being an "intentional and wrongful act," would not amount to a constructive eviction." *Hopkins v. Murphy*, 233 Mass. 476, 477.

The Court erred in the denial of the plaintiff's requests numbered 6, 7 and 8. There is no implied covenant that the property shall continue fit for

habitation as a dwelling house. *Royce v. Guggenheim*, 106 Mass. 201, at 202; *Ware v. Hobbs*, 222 Mass. 327: "Such refusal on neglect to repair not being an "intentional and wrongful act," would not amount to constructive eviction." Also, there was lacking an essential element of a constructive eviction, that the lessee abandoned the premises within a reasonable time. *Callahan v. Goldman*, 216 Mass. 238.

We cannot see that the landlord breached any specific duty which he owed the tenant. *I. Wit Realty Co. v. G. F. Redmond & Co.*, 251 Mass. 344.

The trial judge evidently was of opinion that the implied covenant of quiet enjoyment imposed a duty on the landlord to maintain the rented premiums in an inhabitable condition. Such is not so.

There is no evidence of any affirmative act of the landlord contributing to the condition so that it might be argued there was a continuing nuisance, nor was there any evidence of any act of omission which constituted a breach of any duty owed to the defendant. We are of opinion that the trial judge erred in the denial of the plaintiff's requests numbered 6, 7 and 8 and also in the granting of the defendant's requests numbered 16 and 19.

The finding for the defendant should be vacated and the case remanded to the District Court with instructions to enter a judgment for the plaintiff in an amount to be determined by the said District Court.

Lawrence E. Cooke, for the plaintiff.

Edward J. Fox, for the defendant.